1    stayed right there at the doorway of the bedroom.
2        Q    You stood in the doorway of the bedroom and
3    Officer Layfield was inside the room?
4        A    That's correct.
5        Q    And did you watch Mr. Cannon put his
6    clothes on?
7        A    Yes, I did.
8        Q    What did he put on?  What type of clothing?
9        A    Pants and a shirt, I guess.
10       Q    Did he have any shoes on?
11       A    At that point in time, I can't remember if
12   his shoes were there or outside.
13       Q    Do you recall him putting on pants and
14   shirts?
15       A    Yes.
16       Q    Did you examine his pants and shirt before
17   he put them on?
18       A    No, I did not.  No.
19       Q    And after he put his clothes on, what
20   happened to him?
21       A    He was taken out of that room and put out
22   in the living room, kitchen area in a chair near the
23   table there.

05-577

FILED
AUG -8 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

KATHY S. PURNELL
OFFICIAL COURT REPORTER

Pg 106

```
 1      Q     Was he handcuffed?
 2      A     Yes.  When he was removed from the room, he
 3   was handcuffed.
 4      Q     Who handcuffed him?
 5      A     Detective Layfield.
 6      Q     And who walked him out or took him out to
 7   the living room or dining room area?
 8      A     I'm not sure if Detective Layfield walked
 9   him out there or if someone come in and took him out
10   at that particular point in time.
11      Q     You don't recall how he got back out to the
12   living room?
13      A     No, I do not.
14      Q     Do you recall him being turned over to
15   Officer Jones?
16      A     Yes.  I remember Officer Jones questioning
17   him about the incident.
18      Q     And where was that questioning taking
19   place?
20      A     That took place out in the living room
21   area.  He was seated by the table.  It was a round
22   table in the living room, kitchen area and he was
23   seated in a chair there.
```

```
 1     Q    Okay.  So you don't recall who took him
 2  from the bedroom out to the living room?
 3     A    No, I do not.
 4     Q    And did you seize and take possession of
 5  the coat before Mr. Cannon left the room to go out
 6  to the living room, or after he had gone?
 7     A    No.  He was still in the room when I took
 8  the coat, when I took possession of the coat and
 9  looked in the coat.
10     Q    And did you remove the material from the
11  coat pocket?
12     A    No.  Once I saw what was in there, I turned
13  it over to Detective Layfield.  He was the
14  investigating officer.
15     Q    And you did this while Officer Layfield was
16  still in that room?
17     A    That's correct.
18     Q    And to your knowledge, Mr. Cannon was still
19  in that room?
20     A    Yes, he was.
21     Q    Was Mr. Cannon placed under arrest at that
22  time for the possession of these drugs?
23     A    Yes, he was.
```

```
1      Q     Who told him that?
2      A     I think Detective Layfield actually told
3   him he was under arrest for drugs.
4      Q     Did anybody ask him if it was his coat?
5      A     I asked whose coat it was, and nobody gave
6   me any answer.
7      Q     Was that there in the bedroom?
8      A     That was in the bedroom with the female.  I
9   believe her name was Shay Smalls, and Alonzo Cannon.
10     Q     Who carried the coat back out into the
11  living room?
12     A     I can't recall who carried the coat in the
13  living room.
14     Q     Was the coat displayed to Mr. Cannon there
15  in the living room?
16     A     I'm sure it was, yes.
17     Q     Do you recall who displayed the coat there
18  to him in the living room?
19     A     No, I do not, because there was a question
20  as to ownership of the coat.  And as I recall, I
21  think Nate Barnes -- I believe there was a Nate --
22  Mrs. Barnes' son was Nate, and he was asked whether
23  or not it was his coat.  She spoke up and said that
```

```
 1          MR. CALLAWAY:  Your Honor, as far as
 2   argument is concerned, we are dealing here today with
 3   basically two statements.  The statement that was
 4   made to Officer Jones in the bathroom concerning
 5   whether or not he would pass or fail an instant test,
 6   and the defendant has indicated that he would fail
 7   that test because he had consumed marijuana.
 8          We ask that that statement be suppressed
 9   today on the grounds that Officer Jones and the rest
10   of the Delaware State Police Officers went there with
11   the intention of finding the defendant, and if they
12   found the defendant, he would be taken into custody
13   for a probation violation because he had violated his
14   curfew by not being at his residence at that time
15   when he was supposed to be.
16          So at the time that he was taken into
17   custody by the officer, Officer Layfield, when he
18   handcuffed him and turned him over to Officer Jones,
19   he was, in effect, arrested for the violation of
20   probation, and he was also arrested, according to
21   Officer Jones, for the criminal impersonation charge.
22   He was then turned over to the probation officer who
23   then asked him to incriminate himself for the
```

```
1    violation of probation, as well as whether or not he
2    had consumed drugs.  Additionally, Officer Jones has
3    taken the stand and has testified that prior to
4    asking him that incriminating question, his Miranda
5    rights had not been read to him.
6           THE COURT:  So in your view that was when he
7    was subject to custodial interrogation, when he was
8    cuffed and taken by --
9           MR. CALLAWAY:  Taken by Officer Jones from
10   one room to another to be questioned about his
11   violation of probation.  Of course, Your Honor, I
12   think on Monday, during the course of the trial, I
13   would have a different argument with respect to
14   whether or not that testimony is relevant to the
15   charge of possession of drugs, which it probably
16   would not be.
17          THE COURT:  Perhaps.
18          MR. CALLAWAY:  That's probably a two-thorn
19   dilemma with respect for that particular statement.
20   The testimony of the officers is that Miranda rights
21   were given to him while he was sitting there in the
22   dining room, handcuffed in the chair, and we'll let
23   the Court --
```

```
1          THE COURT:  And the other statement that he
2   made about ownership of the coat and possession of
3   the drugs was made, according to the testimony, after
4   he was given his Miranda rights.
5          MR. CALLAWAY:  Yes, Your Honor.
6          THE COURT:  Mr. Gelof?
7          MR. GELOF:  Well, again, in my mind, I don't
8   see that.  Maybe I missed it.  To me, all the
9   statements made to Officer Layfield would come in.
10  There is no kind of investigation of any
11  inappropriateness.  We are just talking about the one
12  statement in the bathroom.
13         I think, realistically, that the standard
14  that the defense seeks to apply -- we are talking
15  about Parole and Probation.  Any time a probation
16  officer goes to someone's house and says, "You know,
17  I came by here yesterday.  Where were you?", they
18  would have to read Miranda rights.  The investigation
19  was basically about an instant test, whether or not
20  you test positive on it.  Irrespective of that, he
21  makes the same statements later on.
22         So as far as the statement coming in, there
23  was the statement in the bathroom, "I am going to
```

```
1    give you an instant test. What's it going to show?"
2    "I am going to be positive for marijuana." "Nothing
3    else; no cocaine?" That same statement was made
4    post-Miranda. So even if their is custodial
5    interrogation, the exact same dialog went through
6    after the fact.
7              I didn't come prepared with case law, and I
8    didn't have the officer testify to the standard
9    probation officer practice. But as a practical
10   matter, as far as admissibility of that statement,
11   there is a difference between a probation officer --
12   even if he has someone in cuffs -- and the
13   investigation that he does in connection with the
14   violation of probation, at least in my mind, than
15   with the investigation of police investigation. This
16   is questioning by a probation officer of a
17   probationee.
18             MR. CALLAWAY: I would argue that that is
19   not correct, Your Honor. We have questioning of an
20   individual who has been arrested for a violation of
21   probation; not questioning by walking up on the
22   street and meeting him. They went there with the
23   intent of finding him and arresting him for violating
```

```
1    probation when they took him into custody.  He was
2    taken into custody because of the violation of
3    probation and handcuffed and then questioned.  It's a
4    little different scenario.
5            MR. GELOF:  I don't want to split hairs,
6    because the same statement as far as Miranda comes
7    in, but the violation was on curfew.  This is an
8    independent violation of probation, which would be a
9    positive test on urine result, and he wasn't being
10   detained on being positive for urine.  So it would be
11   a separate investigation, and I think we are
12   splitting hairs.  A probation investigation is
13   something different than what Mr. Callaway is talking
14   about, but, again, State certainly believes that the
15   same statements are coming in post-Miranda.  Then we
16   go to any other objection Mr. Callaway may have.
17           THE COURT:  It may not make a difference if
18   he did, indeed, make those statements multiple times,
19   but I will decide this as follows:  I am satisfied
20   that when Mr. Cannon made the statement about owning
21   the coat in which the drugs were found and admitting
22   to possessing the marijuana and cocaine that he had
23   been given his Miranda warnings prior to making those
```

1    statements.

2    Now, as to the statement about using

3    marijuana, which he made after he had been handcuffed

4    and taken into the bathroom but before he had been

5    given his Miranda warnings, I do think, under the

6    circumstances, given that he was really being pursued

7    for a curfew violation -- not a possession and not

8    drug usage -- that he had not been given his warnings

9    at that time.  So I will suppress that statement.

10    Whether it's relevant is another issue.  If

11    it comes up at trial, we can decide it then, and as

12    you said, Mr. Gelof, it does sound like he made that

13    statement again after he had been given his Miranda

14    warnings.  So if that is the testimony at trial, that

15    is a different situation.

16    The statement that he made to Officer Jones

17    in the bathroom about using marijuana, I will

18    suppress that statement.  But the other statements

19    about owning the jacket and possessing the cocaine

20    and marijuana, I am not going to suppress those

21    statements.  They were not given in violation of his

22    Miranda warnings.  Indeed, he was given his Miranda

23    prior to making those statements.  So they will be

1   admissible.

2            MR. CALLAWAY:  Your Honor, while Mr. Cannon
3   is here and while Mr. Gelof is here, I think the
4   Court should be made aware of the fact that on Monday
5   of next week, this trial is scheduled to proceed.  I
6   also have two other trials scheduled for Monday, one
7   of which is a rape in the first degree charge --
8   maybe not first degree -- with Ms. Withers.  So I
9   have two very serious cases scheduled to go forward
10  on Monday.  I guess Thursday we will have to make a
11  determination as to what we are going to do.

12           THE COURT:  Well, I knew this case was
13  coming up for trial, which is why I wanted to give
14  you a decision today.  Your final case review is
15  tomorrow?

16           MR. CALLAWAY:  I think today was the date
17  set for this, but I would ask that he be brought back
18  in tomorrow so if we have to make a determination as
19  to what goes Monday and what doesn't.

20           THE COURT:  I think you should have the
21  benefit of this decision, if that changes anybody's
22  mind tomorrow.

23           MR. CALLAWAY:  Thank you, Your Honor.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER
pg. 116

```
 1    Exhibit No. 1 and the other will be marked as Court
 2    Exhibit No. 2.
 3              THE COURT:  Thank you.
 4              Is there anything else, Mr. Callaway?
 5              MR. CALLAWAY:  No, Your Honor.
 6              THE COURT:  Mr. Gelof, all set?
 7              MR. GELOF:  Yes, Your Honor.
 8              THE COURT:  Bring the jury in, please.
 9              (Whereupon, the jury returned to the
10        courtroom.)
11              THE COURT:  Good morning, everyone.
12              THE JURY:  Good morning.
13              THE COURT:  I just want to put on the record:
14    Was everyone able to follow the instruction that I
15    gave you last night?
16              THE JURY:  Yes.
17              THE COURT:  Everyone is nodding yes.  If you
18    weren't, please raise your hand.
19              Nobody raised their hands, so the record will
20    reflect that everybody has followed the Court's
21    instruction over night.
22              Ladies and gentlemen, now I am going to read
23    to you the instructions on the law in this case.  It
```

```
1    takes little while.  Please pay close attention.  When
2    I am done reading these instructions, the attorneys
3    will make their closing arguments.  You will get a
4    copy of these instructions to take with you when you
5    begin your deliberations.  Also pay attention now.  If
6    you have questions about them later, you will have a
7    copy for your reference.  I believe we give a copy for
8    each juror.
9            Members of the jury, you have now heard all
10   the evidence that is going to be presented in this
11   case.  In a few minutes you will hear the arguments
12   for the attorney for the State and for the defendant.
13   I shall not review the evidence that has been
14   presented to you, because, you, as the jury, are the
15   sole and exclusive judges of the facts of the case, of
16   the credibility of the witnesses, of the weight and
17   value of their testimony.
18            I shall now instruct you as to the applicable
19   principles of law governing this case.  No single one
20   of these instructions states all of the law applicable
21   to this case.  Therefore, you should listen and
22   consider all of these instructions together in
23   reaching your verdict.  It is your duty as jurors to
```

```
 1   follow the law as I shall state it to you.  You are
 2   not to be concerned with the wisdom of any rule or law
 3   stated by me.  You must apply the law as instructed
 4   even if you do not agree with that law because it is
 5   the law of this State as enacted by the Legislature.
 6              It is your duty to determine the facts and to
 7   determine them only from the evidence presented to
 8   you.  You are to apply the law as I will instruct you
 9   to the facts and in this way decide the case.
10              If, in these instructions, any rule,
11   direction, or idea is stated in a manner which appears
12   to give it more significance than the other
13   instructions, no such emphasis is intended by me and
14   none should be inferred by you.
15              At times throughout this trial I have been
16   called upon to pass upon the question of whether or
17   not certain evidence may be properly admitted.  It is
18   the duty of a lawyer to object to evidence which he or
19   she believes may not be properly offered and you
20   should not be prejudiced in any way against a lawyer
21   who makes objections or the party he or she
22   represents.  You are not to be concerned with the
23   reasons for such rulings and are not to draw any
```

```
 1    inferences from the rulings.  Whether evidence is
 2    admissible is purely a question of law.  In admitting
 3    evidence to which an objection is made, I do not
 4    determine what weight should be given to such
 5    evidence, nor do I pass upon the credibility of the
 6    witnesses.  Any offer of evidence that has been
 7    rejected by me, you, of course, must not consider.  As
 8    to any question to which an objection was sustained,
 9    you must not speculate as to what the answer might
10    have been.
11              The defendant is charged with possession with
12    the intent to deliver cocaine, possession with the
13    intent to deliver marijuana, possession of cocaine
14    within 1,000 feet of a school, possession of marijuana
15    within 1,000 feet of a school, criminal impersonation,
16    and possession of drug paraphernalia.  The defendant
17    has pled not guilty to these charges.
18              The indictment is a mere accusation against
19    the defendant.  It is the charging document.  It is
20    not, in itself, any evidence of the guilt of the
21    defendant and you should allow yourselves to be
22    influenced in any way, however slight, by the fact
23    that an indictment has been filed against the
```

1  defendant.
2          In these instructions, I will explain the
3  elements of the offenses charged in the indictment.
4  The elements of an offense are those physical acts,
5  attendant circumstances, results and states of mind
6  which are specifically included within the definition
7  of the offense in the Criminal Code.  If words are
8  defined in the Criminal Code, I will give you their
9  code definitions.  Otherwise, you should give words
10 their commonly accepted meanings.  I will also explain
11 the burdens of proof the law imposes upon the State,
12 as well as other aspects of your function as jurors.
13 And, finally, I will explain the possible verdicts in
14 this case.
15         As to Count 1, possession with the intent to
16 deliver cocaine, in order to find the defendant guilty
17 of possession with the intent to deliver cocaine, you
18 must find that all of the following elements have been
19 proven beyond a reasonable doubt:  Number one, the
20 material seized by the police, analyzed by the State
21 Medical Examiner, and introduced into evidence is
22 cocaine.  And, two, the defendant had the material in
23 his possession.  Possession, in addition to its

```
 1   ordinary meaning, includes location in or about the
 2   defendant's person, premises, belongings, vehicle or
 3   otherwise within his reasonable control.  A person
 4   possesses something wherever it is located only if he
 5   has dominion, control, and authority over it.  And,
 6   number three, the defendant acted knowingly, that is,
 7   he knew or was aware that he possessed the substance
 8   alleged.  A person acts knowingly with respect to
 9   possession within the meaning of this chapter when he
10   knows or is aware of such possession.  And, number
11   four, the defendant had an intent to deliver the
12   cocaine.  Deliver or delivery means the actual,
13   constructive, or attempted transfer from one person to
14   another of a controlled substance whether or not there
15   is any agency relationship.  A person acts
16   intentionally when it is his conscious object or
17   purpose to engage in conduct of that nature.
18            If, after considering all of the evidence,
19   you find that the State has established beyond a
20   reasonable doubt that the defendant acted in such a
21   manner as to satisfy all of the elements which I have
22   just stated, at or about the date and place stated in
23   the indictment, you must find the defendant guilty of
```

```
 1    possession with the intent to deliver cocaine.  If you
 2    do not so find or if you have a reasonable doubt, then
 3    you may consider the lesser-included offense of
 4    possession of cocaine.
 5              In order to find the defendant guilty of
 6    possession of cocaine, you must find all of the
 7    following elements have been proven beyond a
 8    reasonable doubt:  Number one, the material seized by
 9    the police, analyzed by the State Medical Examiner,
10    and introduced into evidence is cocaine or a mixture
11    containing cocaine.  Number two, the defendant had the
12    material in his possession.  Possession, in addition
13    to its ordinary meaning, includes location on or about
14    the defendant's person, belongings, premises, vehicle
15    or otherwise in his reasonable control.  A person
16    possesses something wherever it is located only if he
17    has dominion, control, and authority over it.  And,
18    number three, the defendant acted knowingly, that is,
19    he knew or was aware he possessed the substance
20    alleged.  A person acts knowingly with respect to
21    possession within the meaning of this chapter when he
22    knows or is aware of such possession.
23              If, after considering all of the evidence,
```

```
 1   you find that the State has established beyond a
 2   reasonable doubt that the defendant acted in such a
 3   manner as to satisfy all of the elements which I have
 4   just stated, at or about the date and place stated in
 5   the indictment, you must find the defendant guilty of
 6   possession of cocaine.  If you do not so find, you
 7   must find the defendant not guilty of possession of
 8   cocaine.
 9              As to Count 2, possession with the intent to
10   deliver marijuana, in order to find the defendant
11   guilty of possession of marijuana with the intent to
12   delivery, you must find all of the following elements
13   have been proven beyond a reasonable doubt:  Number
14   one, the material seized by the police, analyzed by
15   the State Medical Examiner and introduced into
16   evidence is marijuana.  And, number two, the defendant
17   had the material in his possession.  I previously
18   defined the term possession for you.  Number three,
19   the defendant acted knowingly, that is, he knew or was
20   aware he possessed the substances alleged.  A person
21   acts knowingly with respect to possession within the
22   meaning of this chapter when he knows or is aware of
23   such possession.  Number four, the defendant had an
```